THEODORE W. SCHAEFFER, LAURA SCHAEFFER SCHNORRENBERG AND WACHOVIA BANK & TRUST COMPANY, A CORPORATION, v. H. A. HASELTINE AND ADALINE HASELTINE.

(Filed 25 February, 1948.)

**1. Wills § 31—**

   The intent of the testator as gathered from the four corners of the will is the guiding star in the interpretation of the instrument.

**2. Same—**

   Apparent inconsistent provisions will be reconciled if reasonably possible so as to give effect to each in accordance with the general purpose of the will.

**3. Wills § 33c—Held: Beneficiary took vested defeasible life interest with power of disposition and could exercise power of disposition before termination of prior intervening life estate.**

   Testator devised the home place in trust for the benefit of his wife for life and after her death for the benefit of his sisters-in-law for their lives, with power of appointment to one of them by will, and power of appointment or disposition to the other by deed or will. The will further provided that the trustee at the request of, or with the consent of testator's wife, should have the power to sell the home place and reinvest in other property, with power of disposition by will to his wife. The wife did not elect to have the home place sold. *Held:* Upon the death of testator the sisters-in-law took a vested beneficial interest for life with power of appointment or disposition, subject to the intervening life interest of the wife, subject to be defeated only in the event the wife elected to have the home place sold for reinvestment, and therefore the exercise of the power of disposition by will of one of the sisters-in-law is effective notwithstanding the fact that such sister-in-law predeceased testator's wife.

**4. Wills § 33f: Deeds § 12—**

   Whether a conveyance of property in general terms or by general description constitutes a valid exercise of a power of disposition or appointment is to be determined in accordance with the general rule in respect to conveyances by deed, but is governed by statute, G. S., 31-43, in respect to the exercise of such power by will.

**5. Wills § 33f—**

   Testatrix had a vested one-half life interest in the *locus* with power of disposition, subject to a prior intervening life estate, and subject to defeas-

ance at election of the prior life tenant. Testatrix died prior to the death of the first life tenant, who later died without exercising her election to defeat testatrix' interest. Testatrix devised all the rest and residue of her estate, "both real, personal and mixed, wherever situate," in trust for her niece for life and then in fee to her nephew. *Held:* The will was a valid exercise of the power of appointment of testatrix' one-half interest in the *locus*, there being nothing in the will to indicate any contrary intent. G. S., 31-43.

APPEAL by individual plaintiffs from *Nettles, J.*, in chambers in Asheville, N. C., 20 September 1947, BUNCOMBE. Affirmed.

Controversy without action to determine whether plaintiffs are entitled to specific performance of a contract of purchase and sale of real property and for directions to the plaintiff trustee.

Individual plaintiffs, having contracted to sell and convey to defendants certain residential property in the City of Asheville known as Beaufort Lodge, tendered to them a deed sufficient in form to convey said property in fee. Defendants declined to accept the deed and pay the agreed purchase price for the reason that said plaintiffs cannot convey a good and sufficient title as to a one-half interest in said property.

Thereupon, the controversy, which involves the interpretation of certain wills, was submitted to the court under G. S., 1-250, for adjudication.

On 11 June 1931 Theodore F. Davidson died testate, seized and possessed of real and personal property in Buncombe County, including the land in controversy. Except for certain specific bequests he devised all his property to plaintiff bank, in trust. The trust provisions are divided into four parts or sections. Section 1 provides for the payment of his debts and for the accounting with his wife for her funds handled by him. In section 2 he directs the trustee to hold his residence property, known as Beaufort Lodge, in special trust for his wife, Sarah L. C. Davidson, who was to continue to occupy the same if she so desired. In the event she did not occupy the residence he directs that "the Trustee shall have power to collect all income and revenues arising or received from said property and pay, semi-annually, the net proceeds to my said wife for her life, and afterwards to the persons, objects or uses she may by her last will designate." After vesting the trustee with power to sell said property and invest the proceeds, the will further provides: "Should my wife prefer, the Trustee may invest the proceeds of any sale, or so much thereof as may be necessary, in the purchase of another home or real estate; the title therefor to be conveyed to the Trustee, but to be held for the use and benefit of my wife as hereinbefore provided and subject to her testamentary disposition."

Further provisions respecting the *locus* are as follows:

"And after the death of my said wife, I will and direct the trustee hereinbefore mentioned shall hold and manage the two lots on North Liberty Street, including my residence, for the joint use and enjoyment, share and share alike, of my wife's sisters, namely LAURA CARTER . . . and MRS. FRANCES SCHAEFFER . . ., to be managed under the same trusts, conditions and limitations set forth in the devising trust to and for my wife hereinbefore set forth; but should the said Laura Carter so desire, her share and interest may be separated·from the other share of her sister and be disposed of in fee, as she may by a deed or will convey or devise; but the share and interest of Frances Schaeffer shall be managed and held for her sole and separate use for her natural life and then for the use and benefit of such persons and objects as she shall by her last will and testament provide; and on failure to make such testamentary disposition, to any child or children she may leave surviving her in fee . . ."

A subsequent provision in respect to this property is as follows:

"If, for any reason, the devises to my wife's sisters, made in Section 2 of the foregoing dispositions should become void or inoperative, I will and direct the interests and estates therein mentioned shall be held and managed for such uses, persons or objects which my wife by her last Will shall designate."

In section 3 he makes certain bequests, coupled with the following provision:

"In the event any of the persons or beneficiaries under the foregoing bequests and devises shall have died before my death, or if for any cause, it shall become impracticable to carry them, or·any of them, into effect, I declare such bequests lapsed, and the property and interest and estate therein mentioned shall revert to and be treated as a part of the residue of my estate."

In section 4 the testator devises "all the residue of my estate and property not otherwise herein disposed of, as well as that which shall have lapsed and reverted as provided in the next preceding paragraph hereof shall be held and used by my said Trustee for the following objects and persons:

"(2) The residue of my estate, after the dispositions, devises and bequests hereinbefore made, shall be held and employed for the uses and trusts for my wife in same manner as I have directed the real property known as 'Beaufort Lodge' and the Ten Thousand Dollars in bonds, or other securities; that is, to safely invest and manage the same, paying the income to her for her life, and one-half of the principal of what may be remaining to such person, persons or objects as she shall by her last Will and Testament, duly executed, designate."

Laura Carter predeceased Sarah L. C. Davidson, the widow. She died testate but without issue 8 December 1931. In her will, after making certain specific bequests, she devised and bequeathed to the Wachovia Bank & Trust Co. all the rest and residue of her estate "both real, personal and mixed, wherever situate" in trust, to pay the income therefrom to her two sisters, Sarah L. C. Davidson and Frances Carter Schaeffer, during their natural lives and to the survivor so long as she may live and "at the death of the survivor of my said sisters, pay the said income to my niece and namesake, Laura Schaeffer Schnorrenberg, for the balance of her natural life and, at her death, pay the remainder to my nephew, Theodore Wilhelm Schaeffer, discharged of the trust."

Sarah L. C. Davidson died testate 27 August 1934. In her will she, in Item IV thereof, specifically refers to the powers of disposition contained in her husband's will and provides: "I do hereby designate my said sisters, Laura Carter and Frances Schaeffer, as the persons who shall receive the one-half of the principal of the residuary estate of my said husband mentioned in subsection 2 of paragraph Four of his said will; and I do hereby name and designate my said two sisters, Laura Carter and Frances Schaeffer, as the parties who shall receive any and all other rights, properties and benefits which the said will of my late husband gives me the right to dispose of this my last will; and I do hereby give, devise and bequeath to my said sisters, Laura Carter and Frances Schaeffer, to be theirs, share and share alike, all the moneys, properties, rights and benefits which the said will of my late husband authorized and empowered me to dispose of, or to designate the recipient of by my last will, the same to be theirs in fee simple and absolute."

There is a codicil to her will, executed after the death of Laura, in which she takes note of Laura's death and provides: "I now will and desire and so direct that my sister FRANCES SCHAEFFER, shall have and take all and everything which I gave to my sister, Laura Carter, in and by my said will, especially that given by the Fourth Item of my said will; and I do hereby designate my said sister, Frances Schaeffer, as the person who shall receive any and all moneys, properties, rights and benefits mentioned in said Fourth Item of my said will; and I do hereby give, devise and bequeath the same to her, my sister, Frances Schaeffer, to be hers absolutely."

Frances Carter Schaeffer died testate 7 June 1938. She devised to her daughter, Laura Schaeffer Schnorrenberg, and son, Theodore W. Schaeffer, the real property known as Beaufort Lodge and two adjacent lots to be theirs, share and share alike. In that connection she provides that "In making this devise, it is my purpose and intention to exercise whatever power that was given me by the will of General Theo. F. Davidson concerning said property known as 'Beaufort Lodge,' as well as

to devise to my said children all and every right, title and interest which I have in all of said property mentioned above, the entire interest to be theirs in fee simple, share and share alike."

Thereafter, Laura Schaeffer Schnorrenberg and Theodore W. Schaeffer entered into the contract of purchase and sale which is the subject of this controversy.

The plaintiff bank joined in the submission of the controversy as a party plaintiff "for the purpose of having the Wills of Theodore F. Davidson, deceased, and Laura Carter, deceased, construed by the Court and being instructed with respect to its duties, if any, under said wills." At the same time the bank agrees that the price offered for the *locus* is reasonable and that if it be adjudged that it holds an undivided one-half interest as trustee it will join in the deed of conveyance upon the payment to it as trustee of one-half of the purchase price.

When the cause came on for hearing, Nettles, J., being of the opinion "that under the terms of General Davidson's will, Laura Carter was given a clear power of appointment over an undivided one-half interest in and to the *locus in quo,* with power to convey the same, in fee, either by deed or by will, and that the residuary clause of the will of Laura Carter was adequate in law, and did pass such interest to the plaintiff Wachovia Bank & Trust Company, as Trustee, and that the said bank, as Trustee, is now vested with the legal title to such undivided one-half interest in and to the *locus in quo,* upon the trusts as enumerated in the will of Laura Carter," adjudged: (1) that the said trustee is entitled to receive, hold, and manage an undivided one-half interest in and to the *locus* upon the trusts declared in the will of Laura Carter, deceased; (2) that the deed tendered by the individual plaintiffs is inadequate to convey a good and marketable fee simple title for Beaufort Lodge; and (3) that upon the payment of one-half of the purchase price, to wit, $5,000, to said trustee under the will of Laura Carter, said trustee shall execute a deed conveying to the defendants the one-half undivided interest therein devised to it by Laura Carter, deceased. The individual plaintiffs excepted and appealed.

*Tench C. Coxe and S. G. Bernard for plaintiff appellants.*
*Smathers & Meekins for defendant appellees.*

BARNHILL, J. Subject to the intervening life estate devised to Mrs. Davidson, a one-half interest in Beaufort Lodge was devised to the trustee for the use of Frances Carter Schaeffer for life, with power in her to appoint by will the ultimate takers. This limitation over was subject to be defeated by a sale of the property by the trustee with the consent of the widow. The property was not sold and Mrs. Schaeffer died, leav-

ing a will in which she exercised the power, designating her two children, the individual plaintiffs, as the ultimate takers. Therefore, upon the death of Martin W. Schaeffer, the individual plaintiffs became the owners in fee of the one-half interest in the *locus* which was devised to their mother for life. This was the conclusion of the court below to which no exception was entered. Its correctness seems to be conceded.

The plaintiff trustee, although not a party to the contract of purchase and sale, has ratified the same and agreed to join in the execution of the deed upon the payment to it of one-half of the purchase price. Hence this proceeding has resolved itself into a controversy over the ownership of the one-half interest therein originally devised to Laura Carter for life.

Therefore, the question posed for decision is this: Did Laura Carter by will effectively designate the ultimate takers of her one-half interest in the *locus?* If so, plaintiff trustee still holds title to a one-half interest therein for the use and benefit of *feme* plaintiff for life with remainder to plaintiff Theodore W. Schaeffer, "discharged of the trust." The court below answered the question in the affirmative. In that conclusion we concur.

It is an axiomatic rule of construction that the intent of the testator, as expressed by him, is to be ascertained from the four corners of the will, *Trust Co. v. Board of National Missions,* 226 N. C., 546, 39 S. E. (2d), 621, and cited cases, and that this intent is the guiding star which must lead to the ascertainment of the meaning and purpose of the language used. *Smith v. Mears,* 218 N. C., 193, 10 S. E. (2d), 659, and cited cases.

Where there are apparent inconsistencies in the will, they are to be reconciled, if reasonably accomplishable, so as to give effect to each in accordance with the general purpose of the will. *Holland v. Smith,* 224 N. C., 255, 29 S. E. (2d), 888.

A careful consideration of General Davidson's will in the light of these principles leads to the conclusion that he had and expressed a definite intent in respect to the *locus* in controversy.

He devised his home site to plaintiff trustee for the use and benefit of his wife for and during her natural life with power in the trustee, by and with the consent of his widow, to sell the same and reinvest the proceeds in other property. In the event it was sold and reinvested, then the widow had the power of appointment of the ultimate takers of the property so acquired.

On the other hand, if the property was held intact and not sold during the life of the first taker, then the trustee, at the death of Mrs. Davidson, was to continue to hold the same in trust for the joint use of Laura Carter and Frances Schaeffer for and during their natural lives. Mrs.

Schaeffer was vested with authority to designate the ultimate takers of a one-half interest therein by will only, but. Laura Carter was granted authority to dispose of her one-half thereof in fee, either by deed or will.

Thus it appears that the testator vested the trustee with authority, at the request or by and with the consent of Mrs. Davidson, to sell the home place and thereby defeat the limitation over to the testator's two sisters-in-law. If Mrs. Davidson elected to have the property sold, thereby defeating the limitation over, then she should name the ultimate takers of the after acquired property. Hence the powers of appointment or disposition vested in Frances Schaeffer and Laura Carter were subject to be defeated by a sale during the life of the first taker.

But the property was not sold during the life of Mrs. Davidson. Hence the respective powers vested in the two sisters were not defeated.

Laura Carter, at the death of the testator, became seized of a vested beneficial interest in the Beaufort Lodge property. It is true there was an intervening life estate. Even so, she, under the· will, became the beneficial owner thereof jointly with her sister, for life, with the right to claim the benefits thereof at the death of the first taker. This was a fixed interest to take effect after the particular estate was spent. *Priddy & Co. v. Sanderford,* 221 N. C., 422, 20 S. E. (2d), 341. As the one contingency, upon the happening of which her interest would be defeated, never occurred, she continued to be the owner of this beneficial interest until the date of her death, and her power of disposition was at all times exercisable by her from and after the death of the testator. Such disposition as she should make could be defeated only by a sale of the property by the trustee for reinvestment during the life of Mrs. Davidson.

In effect, she was made the agent through whom the testator selected the takers of the remainder, which was otherwise undisposed of. It was through her, in the event the property remained intact during the life of his widow, he was to become wholly testate. *Hardee v. Rivers, ante,* 66; *Trust Co. v. Williamson, ante,* 458.

In her will she made certain specific bequests of personal property and then devised "all the rest and residue" of her estate "both real, personal and mixed, wherever situate" to plaintiff trustee in trust to pay the income therefrom in equal shares to ·her two sisters for their natural lives and at the death of either of them to the survivor. After the death of the survivor, the trustee is required to pay the income to the *feme* plaintiff during her natural life and at her death to pay the remainder to Theodore W. Schaeffer, discharged of the trust.

The prevailing rule to be followed in determining whether a conveyance, by deed or will, of property in general terms or by general description constitutes a valid exercise of a power of disposition or appointment is to be found in 41 A. J., at page 836 *et seq.* See also Anno, 91 A. L. R.,

433. This rule applies in this State in respect to conveyances by deed. *Matthews v. Griffin,* 187 N. C., 599, 122 S. E., 465; *Denson v. Creamery Co.,* 191 N. C., 198, 131 S. E., 581; *Walsh v. Friedman,* 219 N. C., 151, 13 S. E. (2d), 250; *Tocci v. Nowfall,* 220 N. C., 550, 18 S. E. (2d), 225.

But where the question involved is as to whether the power has been exercised by testamentary devise it has been abrogated by statute and a new and different rule substituted therefor.

"A general devise of the real estate of the testator, or of his real estate in any place or in the occupation of any person mentioned in the will, or otherwise described in a general manner, shall be construed to include any real estate, or any real estate to which such description shall extend, as the case may be, which he may have power to appoint in any manner he may think proper; and shall operate as an execution of such power, unless a contrary intention shall appear by the will." G. S. 31-43; *Walsh v. Friedman, supra.*

As there is nothing in the will of Laura Carter to indicate any contrary intent, it must be construed as a valid exercise of the power of disposition. The property she had the power to devise was a part of her real estate within the meaning of the language used in her will.

In this connection it is not amiss to note that the inconsistencies in the Davidson will, certainly as they relate to this particular property, are more apparent than real. In the event the home place was held intact and not sold during the life of Mrs. Davidson, Laura Carter alone had the authority to designate the ultimate takers of her one-half interest. It was only in the event the property was sold or Laura Carter failed to convey or devise her one-half that any right or power of appointment in respect thereto accrued to Mrs. Davidson. The other powers vested in her in section 4 clearly relate to property other than the *locus.*

For the reasons stated the judgment below must be

Affirmed.